**NOT FOR PUBLICATION**                                                **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

————————————————————— :
                                          :
MONTE J. BOSHKO,                          :
                                          :
                                          :
                                          :
                                          :    CIVIL ACTION NO. 07-4624 (JAP)
                                          :
        Plaintiff,                        :
    v.                                    :    **OPINION**
                                          :
BENTLY NEVADA, LLC, GENERAL               :
ELECTRIC COMPANY, JEFFREY M.              :
GORDON, JOHN DOES 1-10 (said names        :
being fictitious) and ABC COMPANIES       :
1-10 (said names being fictitious),       :
                                          :
        Defendants.                       :
————————————————————— :

APPEARANCES:

Ronald A. Berutti, Esq.
George A. Champion, Esq.
Weiner Lesniak LLP
629 Parsippany Road
P.O. Box 438
Parsippany, New Jersey 07054
        *Attorneys for Plaintiff*

Sean P. Lynch, Esq.
Richard G. Rosenblatt, Esq.
Morgan, Lewis & Brockius LLP-
502 Carnegie Center
Princeton, New Jersey 08540
        *Attorneys for Defendants Bently Nevada LLC, General Electric Company and Jeffrey M.*
        *Gordon*

-1-

PISANO, District Judge.

This action arises from a Complaint brought by Plaintiff, Monte Boshko, ("Plaintiff") alleging that Defendants Bently Nevada, LLC ("Bently Nevada"), General Electric Company ("GE") and Jeffrey M. Gordon ("Gordon") (collectively "Defendants"): (1) discriminated against Plaintiff when they failed to reasonably accommodate his alcohol related disability in violation of the New Jersey Law Against Discrimination ("LAD") and (2) violated New Jersey's Conscientious Employee Protection Act ("CEPA") when they allegedly retaliated against Plaintiff after he reported a safety incident at a work site.  Currently before the Court is a motion for partial summary judgment on the LAD claim brought by Plaintiff and a cross motion for summary judgment on behalf of Defendants.  For the reasons set forth herein, the Court denies Plaintiff's motion for partial summary judgment and grants summary judgment in favor of Defendants.

I.      BACKGROUND[1]

   A.      Plaintiff's Employment History

Plaintiff was employed by GE and Bently Nevada, a subsidiary of GE, for nineteen years, collectively.  As a field based project manager, Plaintiff's job requirements included supervising contractors, managing the financial reporting for projects, and maintaining contacts with customers.  Def. Stmt. Mat. Facts, Decl. Sean P. Lynch, Ex. 2, 37:13-38:2.  In addition, Plaintiff's basic employment requirements included reconciling expenses on his corporate credit

_____

[1]The background is drawn from the undisputed facts set forth in Plaintiff's Rule 56.1 Statement of Material Facts, Defendants' Rule 56.1 Statement of Material Facts, Defendants' Response to Plaintiff's Rule 56.1 Statement of Material Facts, Plaintiff's Counterstatement of Undisputed Facts Pursuant to Rule 56.1 and Defendants' Response to Plaintiff's Rule 56.1 Counterstatement of Material Facts; as well as referenced exhibits.

card within 30 days; managing financial reporting; maintaining a time sheet; keeping his supervisor appraised of the status of projects; checking and responding to emails on a daily basis; and checking and responding to voicemails on a daily basis.  Def.'s Stmt. of Mat. Facts ¶ 22. Plaintiff was provided with a laptop, cellular phone and high speed internet access at GE's expense to accomplish these tasks.  Gordon was Plaintiff's supervisor during the relevant time periods.

From 2002 through 2007, Plaintiff developed a pattern of erratic work performance.  He would perform poorly and then improve after he was threatened with termination.  During the course of 2006, Plaintiff's performance began to deteriorate once again.  On multiple occasions throughout the year, Gordon admonished Plaintiff for failing to perform his basic job responsibilities.  As a result of his performance failures, Plaintiff received a "less effective" employee rating for 2006 during the GE annual employee review process.  Accordingly, he was placed on a Performance Improvement Plan ("PIP") in March 2007.[2]  Specifically, Plaintiff was instructed to improve on internal/external communications and completing tasks in a timely manner.  Pl.'s Counterstmt. of Mat. Facts ¶ 37; Def.'s Response to Pl.'s Rule 56.1 Counterstmt. of Mat. Facts ("Def.'s Response") ¶ 39.  Plaintiff was given until June 4, 2007 to meet his performance improvement goals, which was consistent with GE's internal policies.  After he failed to meet the objectives set forth in the PIP, he was terminated from GE on July 13, 2007. Plaintiff contends that his poor performance was due to Defendants failure to accommodate his alcohol related disability and/or he was terminated because they retaliated against him after he

---

[2]Plaintiff was placed on similar PIPs in 2003 and 2005 and was aware that his employment could be terminated if he did not satisfy the PIP objectives.

reported an asbestos exposure incident.

**B.      Facts Relating to the LAD Claim**

Plaintiff claims that he suffers from an addiction to alcohol.  On March 3, 2006, Plaintiff informed Gordon of his alcohol problem.  He assured Gordon that drinking did not affect his work performance other than causing weight gain, reducing his self-esteem and forcing him to move slower due to hangover induced headaches.

Gordon allowed Plaintiff to take personal time off between March 3, 2006 and March 17, 2006 to seek help for his addiction problem. Additionally, he referred Plaintiff to the GE Employee Assistance Program ("EAP") that provides "personal and confidential assessment[s], counseling and referral services."   Def. Stmt. Mat. Facts, Decl. Sean P. Lynch, Ex. 30 at 72. Through this program, Plaintiff was referred to St. Barnabus Health Center ("St. Barnabus") for substance abuse treatment.  At St. Barnabus he was examined by substance abuse professionals who conducted a complete assessment and created a treatment plan that included regular attendance at Alcoholic Anonymous ("AA") meetings.  Plaintiff attended one AA meeting but abandoned treatment because he felt uncomfortable.  On March 27, 2006, Plaintiff informed Gordon that he did not feel comfortable at the AA meeting and requested help seeking alternative treatment.  Gordon then referred him to the GE Disability Care Nurse ("Nurse") to explore his other options.

At the end of March, Plaintiff was needed to work on a major project for an important customer.  Between April 2006 and August 2006, Plaintiff did not raise any issues with Gordon regarding his alcohol abuse.  Plaintiff claims that he quit consuming alcohol "cold turkey," and without professional assistance, on September 24, 2006 because of the importance of the

-4-

project.[3]

However, during the Fall of 2006, Plaintiff's communication and time management skills continued to deteriorate.  When Gordon confronted him about this, Plaintiff informed him that his poor performance was related to hyperactivity that he attributed to alcohol withdrawal.  In an email to Plaintiff dated, December 28, 2006, Gordon stated: "I highly recommend that you speak with another professional to address what you feel is hyperactivity due to your stoppage of alcohol intake since August.  Please call the GE nurse that I've told you to call for the past nine months.  **I want you to call me later this afternoon and hopefully you will have talked to her by then.**"  Def. Stmt. Mat. Facts, Decl. Sean P. Lynch, Ex. 34 (emphasis in original).

On January 2, 2007, Gordon once again provided Plaintiff with the phone number for the Nurse.  Pl.'s Response to Def.'s Stmt. of Mat. Facts ¶ 70.  Plaintiff admitted that he did not request leave and never contacted the GE human resources department to discuss his alcoholism/hyperactivity issues.  *Id.* at 72.  Furthermore, Plaintiff did not seek any outside medical treatment for his withdrawal symptoms, although he admitted that he did see his primary care physician during the Fall of 2006 for an unrelated reason.  *Id.* at 71.  Plaintiff also admitted that at the beginning of 2007 his hyperactivity had subsided and he did not require any workplace accommodations.  *Id.* at 73.  However, due to Plaintiff's poor performance throughout the course of 2006, he was placed on the PIP for 2007.

### C.    Facts Relating to the CEPA Claim

Shortly after being placed on the 2007 PIP, Plaintiff was assigned to act as the site project

---

[3]The parties dispute whether or not Plaintiff did in fact quit drinking on this date; however this fact is not material for the purposes this summary judgment motion.

manager for a project at Florida Power & Light's ("FP&L") Wyman Station Facility in Maine. He was specifically assigned to design, implement and install the condition monitoring system upgrade for the G-2 turbine generator located at FP&L's site.  While Plaintiff was in charge of the overall project, GE field engineer, Tracy Tuttle ("Tuttle"), was responsible for ensuring that Plaintiff had access to the machine and the necessary parts.  Tuttle's team disassembled and moved pieces of the machine to assist Plaintiff in completing the upgrade.  When Plaintiff was finished, Tuttle's team reassembled the generator.

There were asbestos warnings prominently displayed on the generator in many locations. Additionally, FP&L warned that the underside of the lagging surrounding the generator had material containing asbestos sprayed on its surface.  On April 2, 2007, Plaintiff underwent mandatory safety training and was instructed to report any incident involving "presumed asbestos containing material" to John Downing or Todd Bayreuther, employees of FP&L.  Def. Stmt. Mat. Facts, Decl. Sean P. Lynch, Ex. 2, 233:15-234:22; Ex. 38 at 5; Ex. 40 ¶ 3.

On April 5, 2007, millwrights, acting under Tuttle's authority, disassembled the turbine generator's lagging and performed additional maintenance.  Plaintiff was not present while the lagging was removed.  The next day, Plaintiff observed a millwright using a shop vacuum, without filters, to clean the floor beneath the area where the lagging had been previously located. Plaintiff believed, based on his training and experience, that the millwright was vacuuming pieces of asbestos insulation off of the floor.  He further believed that vacuuming material containing asbestos would cause the asbestos to become friable and expelled into the air. Plaintiff understood that this conduct violated OSHA regulations.  He claims that he informed

Tuttle about the incident and that Tuttle told him not to say anything.[4]  Def.'s Stmt. Mat. Facts;

Decl. Sean P. Lynch, Ex. 2, 252: 3-10; Ex. 40 ¶ 7-8.  Plaintiff, however, did not inform anyone

from FP&L about the possible asbestos exposure as required by FP&L safety procedures.  *Id.* at

252:22-253:9.  Additionally, he claims that he informed Gordon about the incident during a

conference call on April 12, 2007.[5]  Def.'s Response ¶ 165.

### D.    Plaintiff's Termination

Plaintiff admitted that he did not meet the expectations set forth in the 2007 PIP.  Decl.

Sean P. Lynch, Ex. 2, 152:19-153:5; 158:10-163:22; 172:9-173:7; 177:14-194:10; 501:2-25;

Reply Decl. Sean P. Lynch, Ex. B 501:2-23.  Specifically, Plaintiff admitted that he failed to

check and respond to emails daily, did not provide daily email updates to customers, did not copy

Gordon on customer emails, and neglected to return Gordon's phone calls.  *Id.*  Plaintiff also

violated GE's expense reimbursement policy on multiple occasions causing his corporate credit

card to be suspended three times.  Def's Response ¶ 74.  After he failed to meet the objectives set

forth in the PIP, he was terminated on July 13, 2007, which was approximately 10 weeks after

the asbestos incident at FP&L.

### E.    Procedural History

On September 27, 2007, Plaintiff filed an eight count complaint against Defendants

alleging various forms of LAD and CEPA claims.  On August 1, 2008, Plaintiff moved for partial

---

[4]This fact is in dispute because in his deposition Tuttle stated that Plaintiff never
informed him of the incident.  Def.'s Reply Brief, Reply Decl. of Sean P. Lynch, Ex. D, 51:13-
17.  However, Tuttle was not involved in the ultimate decision to fire Plaintiff.

[5]There is a dispute as to whether or not Plaintiff informed Gordon of the incident prior to
April 12, 2007, however this is not material.

summary judgment as to the LAD claims.  Defendants opposed Plaintiff's motion and asserted a

cross motion for summary judgment seeking dismissal of all claims.  This Court has subject

matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II.     DISCUSSION

### A.      Standard of Review

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(c) "if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at

324.  In so presenting, the non-moving party must offer specific facts that establish a genuine

issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable

to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.

1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need

determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If the

non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine

issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW, Inc.*

-8-

*v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

**B.      LAD Analysis**

The LAD is designed to prevent employment discrimination based on an employee's disability. *Victor v. N.J.*, 401 N.J. Super. 596, 609 (App. Div. 2008). In the instant case, the heart of Plaintiff's LAD claim is that Defendants failed to provide him with a reasonable accommodation for his alcohol related disability. Pl.'s Brief p. 14. To prove a prima facie failure to accommodate disability claim a plaintiff must satisfy the following elements: "(1) plaintiff was handicapped or disabled within the meaning of the statute;[6] (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without the accommodation; [and] (3) plaintiff suffered an adverse employment action because of the handicap or disability." *Victor*, 401 N.J. Super. at 609.

Under the second element, a plaintiff must demonstrate that his employer failed to engage in the interactive process by satisfying the following four factors: (1) the plaintiff informed his employer of his disability; (2) he requested an accommodation; (3) the employer did not make a good faith effort in attempting to assist the plaintiff; and (4) "the accommodation could have been reasonably achieved." *Id.* at 614-15 (citing *Tynan v. Vicinage 13 of the Super. Ct.*, 351 N.J. Super. 385, 401-02, 404 (App. Div. 2002)). However, an employer need not acquiesce "to the employee's every demand" to show that he engaged in the interactive process. *Tynan*, 351 N.J. Super. at 397 (internal citations omitted). Furthermore, the proposed accommodation need only be reasonable, and need not be the employee's preferred accommodation. *Hinnershitz v. Ortep*

---

[6]As a threshold issue, this Court finds that alcoholism is a recognized disability under the LAD. *See Clowes v. Terminix Int'l Inc.*, 109 N.J. 575, 594 (1988) (holding that alcoholism is a handicap within the statute).

*of PA*, No. 97-7148 1998 U.S. Dist. LEXIS 20264 at *14 (E.D. Pa. Dec.22, 1998).

Plaintiff argues that Defendants failed to accommodate him in both March 2006 and during the period from August through December 2006.  The undisputed facts show that Defendants engaged in the interactive process with Plaintiff and that Plaintiff failed to follow through on his rehabilitation.  On March 3, 2006, Plaintiff informed Gordon about his alcohol related disability.  Gordon inquired as to whether Plaintiff's alcohol abuse affected his daily work performance.  Plaintiff responded that his drinking affected his work performance only to the extent that he needed to work through hangover induced headaches and his self-esteem was deflated due to alcohol related weight gain. Gordon then offered Plaintiff the option of taking time off to seek treatment, and gave him the contact information of the GE EAP.[7]  Through this contact, Plaintiff was instructed to regularly attend AA meetings.  However, he attended one AA meeting and then completely abandoned professional treatment because he did not feel comfortable.  Upon his return to work, he again sought advice from Gordon who referred him to the GE Nurse to explore alternative treatment options.  Similarly, during the Fall of 2006, Plaintiff informed Gordon of his hyperactivity after Gordon confronted him about his performance deficiencies.  Gordon once again suggested that he receive medical treatment and provided him with the contact number of the Nurse.

In his moving brief, Plaintiff contends that "the only reasonable accommodation for alcoholism is treatment so that the alcoholic can stop abusing alcohol."  Pl.'s Brief p. 22. Defendants are not required to provide medical care to cure Plaintiff's disability.  *McDaniel v.*

---

[7]Affording "an opportunity for rehabilitation to an employee handicapped by substance abuse" is a reasonable accommodation under LAD.  *Matter of Cahill*, 245 N.J. Super. 397, 401 (App. Div. 1991) (internal citations omitted).

*AlliedSignal, Inc.*, 896 F. Supp. 1482, 1490 fn. 18 (W.D. Mo. 1995) ("The notion that an employer is obligated to cure or mitigate an employee's disability as part of its duty to 'reasonably accommodate' may be unreasonable in and of itself.")  Moreover, the Court stresses that Defendants need only provide Plaintiff with a *reasonable*, not his preferred, accommodation. The fact that Plaintiff considered the treatment that Defendants suggested to be insufficient does not render Defendants' accommodation unreasonable.  Based on the record the Court finds that the Defendants engaged in the interactive process in good faith; thus there is no factual dispute as to the second element of Plaintiff's prima facie disability claim.[8]

Finally, there is no issue of fact regarding the reason for Plaintiff's termination because the evidence reflects that Plaintiff was fired for failing his 2007 PIP.  The instant case is factually similar to *Domurat v. CIBA Specialty Chemicals Corp.*, 353 N.J. Super. 74, 84 (App. Div. 2002), where an employee, who suffered from an alcohol related disability, was terminated after failing to meet the requirements of his employment probation.  In *Domurat*, when the employee was initially placed on probationary status, he informed his employer about his substance abuse problem and was subsequently referred to AA.  *Id.* at 83.  Like Plaintiff, the employee unilaterally decided that AA was not his preferred treatment method and stopped attending regular meetings.  *Id.*  After he admittedly failed to satisfy the requirements of his probation, the employee, like Plaintiff, was terminated.  *Id.* at 84.  The court found that "[n]othing in the LAD protects employees from termination if they are not performing the essential functions of the

_____

[8]Plaintiff claims that Gordon gave him a fax number instead of a phone number. However, even if this were true, the Court finds that the fact that Gordon provided a contact number evidences sufficient good faith.  Furthermore, there is no evidence suggesting that Gordon acted in bad faith.

-11-

employer's legitimate expectations." *Domurat*, 353 N.J. Super. at 92; *see Svarnas v. AT& T Communications*, 326 N.J. Super. 59, 73 (App. Div. 1999) ("nothing in the LAD is construed to prevent the termination of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment.")

Like the employee in *Domurat,* Plaintiff's employment was terminated as a result of his failure to achieve the goals of his 2007 PIP, despite the fact that he suffered from a disability for which he was reasonably accommodated.  He was instructed to improve his communication skills and complete his duties in a timely fashion, which were essential functions of his job. However, despite Defendants' numerous efforts to accommodate his disability, Plaintiff repeatedly refused to seek treatment and his performance continued to deteriorate.  An employer should not be expected to relax all performance standards for an employee who refuses to accept the employer's reasonable accommodation.  As such, the Court finds that, when viewing the facts in the light most favorable to Plaintiff, he cannot set forth a prima facie case for disability discrimination under LAD.  Plaintiff's motion for partial summary judgment is therefore denied and summary judgment is granted in favor of Defendants on this claim.

   **C.    CEPA Analysis**

Plaintiff contends that Defendants violated CEPA when they retaliated against him for reporting a possible asbestos exposure.  CEPA was designed to protect employees who report their employer's illegal or unethical conduct and to discourage employers from engaging in such conduct. *Dzwonar v. McDevitt*, 177 N.J. 451, 461 (2003) (citing *Abbamont v. Piscataway Township Bd. of Educ.*, 138 N.J. 405, 431 (1994)).  The portion of the statute, upon which Plaintiff bases his CEPA claim, states in pertinent part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer ... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law ...

*N.J.S.A.* 34:19-3(a).

The elements of a prima facie CEPA case are as follows:

(1) [Plaintiff] reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) [Plaintiff] performed a 'whistle-blowing' activity ...;

(3) an adverse employment action was taken against [Plaintiff]; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar*, 177 N.J. at 462 (internal citations omitted); *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d. Cir. 2005).

Under the first prong of the four-part test, a plaintiff need not show that his employer actually violated the law but he must set forth facts demonstrating that he held an objectively reasonable belief that a violation has occurred. *Klein v. Univ. of Medicine & Dentistry of N.J.*, 377 N.J. Super. 28, 39 (App. Div. 2005); *Dzwonar*, 177 N.J. at 462. Most CEPA cases, however, turn on whether or not a causal connection exits under the fourth prong of the test. *Donofry v. Autotote Systems, Inc.*, 350 N.J. Super. 276, 291 (App. Div. 2001)   Courts have construed this prong to require the plaintiff to prove "that his protected, whistle-blowing activity was a determinative or substantial, motivating factor in defendant's decision to terminate his

employment." *Donofry*, 350 N.J. Super. at 296-97 (internal citations omitted). Furthermore, the

fact that an employee is terminated shortly after engaging in a protected activity does not

automatically give rise to the inference of a causal connection. *Young v. Hobart West Group*,

385 N.J. Super. 448, 467 (App. Div. 2005) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494,

503 (3d Cir. 1997)).

      If the plaintiff is successful in proving a prima facie retaliation case the burden shifts to

the employer to show a legitimate, nondiscriminatory reason for the plaintiff's termination.

*Blackburn v. UPS, Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). If the employer is able to articulate a

legitimate, nondiscriminatory reason for the plaintiff's termination, the inference of retaliation

disappears. *Id.* The burden once again shifts back to the plaintiff to prove "'both that the reason

[given by the employer] was false, and that [retaliation] was the real reason'" for plaintiff's

termination. *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis

omitted)). Finally, "[f]or summary judgment purposes, the court must determine whether the

plaintiff has offered sufficient evidence for a reasonable jury to find that the employer's proffered

reason for the discharge was pretextual and that retaliation for the whistle-blowing was the real

reason for the discharge." *Id.* (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.

1995)).

      The Court finds that, in reviewing the record in the light most favorable to Plaintiff, that

there is no question of material fact regarding the CEPA claim. First, the undisputed facts do not

support Plaintiff's contention that he held an objectively reasonable belief that the alleged

asbestos vacuuming incident violated OSHA. Plaintiff admitted that he was not present when the

lagging was removed so he could not have possibly observed asbestos in the area. The next day,

however, he did observe the millwrights vacuuming what he thought was asbestos.  Although he could have reasonably believed that asbestos was present based on the generator's warning signs and his knowledge of the previous days' work, his actions do not suggest a reasonable belief that his employer violated a law.  He was instructed to immediately inform John Downing or Todd Bayreuther of any incident regarding presumed asbestos containing material.  Although he claims he reported the incident to Tuttle (and days later to Gordon), he did not report it to the proper authority as instructed.   Moreover, he did nothing to bolster his belief that asbestos was present but merely based his assumption off of warning signs on the generator.  *See Zydiak v. Caldwell College*, No. A-3802-98T2, 17 (App. Div. Dec. 21, 2000) (finding that an employee who did not have enough information about the level of asbestos, and did not seek more information, did not have a reasonable belief of a violation).  As such, the Court finds that objectively, Plaintiff did not harbor a reasonable belief that his employer's conduct violated any law or regulation.[9]

Even if Plaintiff's belief were reasonable, the fourth prong is the most fatal to Plaintiff's CEPA claim.  There is no genuine factual dispute over whether Plaintiff's alleged whistle-blowing activity was a "determinative or substantial, motivating factor in [D]efendant's decision to terminate his employment."  *Donofry*, 350 N.J. Super. at 296-97.   First and foremost, Plaintiff was placed on a PIP before the reporting incident occurred.  Plaintiff knew that his employment was at risk if he did not meet the goals outlined in the PIP, yet he failed to satisfy the probationary requirements.  Furthermore, there is simply no evidence in the record indicating that

_____

[9]Similarly, Plaintiff fails to satisfy the second prong because he did not adequately perform a whistle-blowing activity since he did not notify the proper authority of the alleged incident.  As to the third prong, the Court does find that an adverse employment action was taken against Plaintiff because he was terminated.  However, as discussed there is no causal connection between his termination and his alleged whistle-blowing activity.

reporting the incident to Tuttle (who had no role in firing Plaintiff) or Gordon, had any bearing on Plaintiff's termination.  Finally, the Court rejects Plaintiff's suggestion that the timing of his termination, which occurred approximately ten weeks after the incident, creates an inference of retaliation since it is undisputed that Plaintiff was on the PIP before the incident occurred.

As such, the Court need not engage in a burden shifting analysis because Plaintiff has failed to "present evidence that a genuine fact issue compels a trial" on his CEPA claim.  *Celotex Corp.*, 477 U.S. at 324.  Accordingly, Defendant's cross motion for summary judgment is granted.

## III.    CONCLUSION

For the reasons expressed above, the Court denies Plaintiff's motion for partial summary judgment and grants Defendants' cross motion for summary judgment.  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: January 28th, 2009

-16-